**Electronically Filed
Intermediate Court of Appeals
CAAP-25-0000117
19-DEC-2025
07:59 AM
Dkt. 61 SO**

NO. CAAP-25-0000117

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

E.A., Petitioner-Appellee, v.
N.B., Respondent-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NO. 2FPA-24-0000104)

### SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

This case involves a dispute over custody of **Child**. After a trial, the Family Court of the Second Circuit awarded sole legal and physical custody to Child's biological father, E.A. (**Father**).[1]  **N.B.**, who claimed to be Child's legal and "psychological father," appeals from the December 23, 2024 *Judgment of Paternity and Order Regarding Custody*.  We affirm.

These findings of fact are unchallenged:[2]  When Child was born, Child's **Mother** was living on Kauaʻi and in a romantic relationship with N.B.  Mother told N.B. he was Child's father.  N.B. was identified as Child's father on Child's birth certificate.  Three years later, Mother told Father (who lived on Maui) he was Child's father.  Two years after that, Mother and

---

[1]    The Honorable Lance D. Collins presided.

[2]    Unchallenged findings of fact are binding on appeal.  <u>Okada Trucking Co. v. Bd. of Water Supply</u>, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002).

Child moved to Maui (where Father lived) to continue Mother's recovery from substance abuse.  Mother and Child initially lived with Father's sister.  Mother resumed her relationship with Father.  Mother began living with Father, while Child continued to live with Father's sister and her family.  Mother relapsed in 2024.  She was to be admitted to a residential treatment program in Nevada, where Child would be cared for by a relative.  She went to Kaua'i to see her mother before going to Nevada.  She overdosed on illegal drugs at N.B.'s house, was taken to a hospital, and was placed on life support.  She was discharged, again used drugs at N.B.'s house, overdosed, and died.

Father petitioned for paternity on October 2, 2024, under the Hawai'i **Uniform Parentage Act**, Hawaii Revised Statutes (**HRS**) Chapter 584.  He submitted genetic test results showing he was Child's biological father.  The return hearing was held on November 21, 2024.  Both sides were represented by counsel. Trial was set for December 3, 2024.  The Family Court ordered briefing on <u>A.A. v. B.B.</u>, 139 Hawai'i 102, 384 P.3d 878 (2016), "and if and how the de facto parent doctrine applies to this case."

Trial was held on December 3, 2024.  The Family Court announced its mixed finding and conclusion that N.B. had not sustained his burden of proving he was entitled to custody under HRS § 571-46(a)(2) and <u>A.A. v. B.B.</u>  An order was entered on December 3, 2024, providing for Child's maternal grandfather to take physical custody of Child until Father could retrieve Child from Kaua'i.

The Judgment was entered on December 23, 2024.  N.B. moved for reconsideration.  The motion was denied.  This appeal followed.  The Family Court entered amended findings of fact (**FOF**) and conclusions of law (**COL**) on April 2, 2025, consistent with Rule 52 of the Hawai'i Family Court Rules.

We have reordered and broken down N.B.'s statement of the points of error.  N.B. contends the family court erred by: **(1)** applying the presumptions of paternity under HRS § 584-4;

2

**(2)** misapplying the de facto custody doctrine under HRS § 571-46(a)(2); **(3)** not conducting a best-interests-of-the-child analysis under HRS § 571-46; and **(4)** ordering an expedited trial without making findings of exigent circumstances, thus depriving N.B. of the opportunity to be heard at a meaningful time and in a meaningful manner.  We address the substantive points first, because they inform our analysis of the procedural point.

**(1)**  N.B. argues the Family Court "erred in applying the presumptions of paternity under HRS § 584-4."  The statute is part of HRS Chapter 584, the Uniform Parentage Act.  "The purpose of HRS chapter 584 is to provide a method whereby certain parties may ascertain the identity of the natural or biological father of a subject child."  Doe v. Doe, 99 Hawaiʻi 1, 16, 52 P.3d 255, 270 (2002) (Acoba, J., dissenting).

Here, genetic testing showed Father was Child's biological father.[3]  N.B. presented no evidence to controvert the test result, and N.B.'s attorney agreed there was no dispute that Father was Child's biological father.  The Family Court did not need to use the HRS § 584-4 rebuttable presumptions.  It did, but that was harmless error because the Family Court correctly applied HRS § 571-46(a)(2).  We discuss this issue next.

**(2)**  N.B. argues the Family Court misapplied the "de facto custody doctrine."  De facto custody is not a doctrine; it is an element of HRS § 571-46, which "provides standards that apply to a court's custody decision in proceedings involving a dispute as to the custody of a minor child[.]"  A.A. v. B.B., 139 Hawaiʻi at 106, 384 P.3d at 882.

As relevant to this case, HRS § 571-46 (2018) provides:

> (a)  In actions . . . where there is at issue a dispute as to the custody of a minor child, the court . . . shall be guided by the following standards, considerations, and procedures:

---

[3]  The Family Court found, and N.B. does not challenge:

> 30.  On October 2, 2024, [Father] submitted a genetic test that indicated by a power of exclusion greater than 99%, that he is [Child]'s biological father.

. . . .

> (2)   Custody may be awarded to persons other than the father or mother whenever the award serves the best interest of the child.  Any person who has had ***de facto custody*** of the child in a stable and wholesome home and is a fit and proper person shall be entitled prima facie to an award of custody[.]

(Emphasis added.)

The term "de facto custody" is not defined by statute, but the supreme court held it to be "consistent with a parental role."  A.A. v. B.B., 139 Hawaiʻi at 107, 384 P.3d at 883.  It is "physical custody in combination with an assumption of incidents of legal custody enumerated in HRS § 571-2, which include 'the duty to protect, train, and discipline the minor and to provide the minor with food, shelter, education, and ordinary medical care.'"  Id.

> Accordingly, the de facto presumption, which is also subject to the best interests of the child standard, would only apply when the nonparent custodian is able to demonstrate that he or she (1) has had "de facto custody" of the child (2) in a stable and wholesome home and that (3) the custodian is a fit and proper person.

Id. at 116, 384 P.3d at 892.

Since N.B. was not Child's father, he would only be entitled to custody if he proved he protected, trained, and disciplined Child, provided Child with food, shelter, education, and ordinary medical care in a stable and wholesome home, that he was a fit and proper person, and that being in his custody served Child's best interests.

The Family Court received evidence about "broken meth pipes" in N.B.'s driveway, "paraphernalia all over the house," and "multiple drug users" going to N.B.'s house to "do drug deals."  After receiving all the evidence, including testimony from N.B. and three witnesses he called, the Family Court explained:

> In this Court's view, [N.B.] has met the element of de facto custody of the child since August.  The Court does find that after mother passed away, that [N.B.] has had de

facto custody of the child. However, in the Court's view, [N.B.] has not met his burden to prove by a preponderance of the evidence that he's a fit and proper person or that he can provide a stable and wholesome home.

Regrettably, I don't find the testimony of [N.B.'s sister] to be credible at all. And I also have some concerns about the credibility of [N.B.]'s testimony and his other witnesses, [his employers]. I don't find that their testimony was clearly helpful -- well, they didn't provide any testimony for the third element, and I didn't find their testimony as to number one was particularly helpful.

So on that basis, I find that [N.B.] has not met his burden to prove that he's a de facto parent. So on that basis, [Father] as the only living parent of [Child] will have sole legal and physical custody of the child and that the Department of Health will be ordered to prepare a new birth certificate with the name of [Father] as the father and the name of the child to be [XXX] as requested in the prayer for relief.

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006). The Family Court found and concluded:

P.    [N.B.] failed to prove that he is a fit and proper individual or that he has a stable and wholesome home.

The mixed finding and conclusion is supported by substantial evidence and correctly applied the law. See Est. of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). It will not be overturned. Id.

**(3)** N.B. argues the Family Court did not conduct a best-interests-of-the-child analysis. Father is Child's only living parent. N.B. was not "entitled prima facie to an award of custody" under HRS § 571-46(a)(2). No other party sought physical or legal custody of Child.[4] Under those circumstances, the Family Court was not required to determine whether being in Father's physical and legal custody was in Child's best interests. The Family Court nevertheless made the determination;

---

[4]    For example, the Department of Human Services under the Child Protective Act, HRS Chapter 587A.

5

it found and concluded it was "necessary and in the best interest of the child that [Child] be physically turned over to his maternal grandfather . . . forthwith, who shall take immediate physical custody of [Child] on behalf of [Father] to facilitate [Father] taking custody of the child as soon as possible." The mixed finding and conclusion is supported by substantial evidence and correctly applied the law, and will not be overturned. See Est. of Klink, 113 Hawaiʻi at 351, 152 P.3d at 523.

**(4)** N.B. argues the Family Court deprived him of the opportunity to be heard at a meaningful time and in a meaningful manner by ordering an expedited trial.

During the return on Father's petition, N.B.'s counsel requested a continuance "to prepare more thoroughly for any kind of hearing." The Family Court stated, "we're not having an evidentiary hearing today." The court asked N.B.'s counsel whether she was available on December 3. Counsel replied, "yes, your Honor." The court set the trial for that date. N.B. did not object, and agreed to the witness and exhibit list deadline. N.B. did not move to continue the trial date.

N.B. served a trial subpoena on the Department of Human Services, requesting records from Child Welfare Services. N.B.'s counsel stated, "we're looking for these allegations and whether the abuse allegations were confirmed or not confirmed, and this is specifically regarding [Father]." The court asked N.B.'s counsel:

> Let me just ask for purposes of the DHS records, in terms of the legal theory . . . what I'm saying is the legal theory why you would need the CPS records is because the theory would go even if [Father] ends up being the legal parent, that your client is the de facto parent, and that the legal parent is not a fit and proper person. That's the overarching theory.

6

Counsel responded, "Right."

Later that day, the court explained further:

> I'm just trying to understand what the need is for the material and it sounds like the need for the material is something that would be needed if [N.B.] first is able to demonstrate that he is a de facto parent under the statute. Because if he's not able to do that, then he does not have standing in any way to raise anything about [Father]'s fitness. So if that's needed to prove [Father]'s fitness, but if he doesn't have standing, then there's no need to have a continuance because it's not relevant. He does haven't [sic] standing to raise that issue.

The Family Court's procedural analysis was right, as we explained in section (3). The Family Court's mixed finding and conclusion that N.B. is not entitled to custody under HRS § 571-46(a)(2) was not clearly erroneous. N.B. was not entitled to a trial continuance to try to prove that Father was not a fit parent.

N.B. also argued, for the first time in his motion for reconsideration, that he "was unable to conduct meaningful discovery and was unable to call several witnesses, all of whom reside on Kauai" to testify about his "reputation and ability as a father, and his emotional and educational support of" Child. He listed six people and two categories of witnesses.

The Family Court made clear during the return hearing on Father's petition that N.B.'s having de facto custody of Child under HRS § 571-46(a)(2) was going to be an issue, and that A.A. v. B.B. may apply. N.B. knew or should have known that he had to show he had "de facto custody" of Child, a stable and wholesome home, and that he was a fit and proper person.

N.B.'s trial witness list identified three of the six people named in his motion for reconsideration — his mother, father, and daughter. N.B. does not explain why he did not or could not call them at trial, especially since the Family Court allowed off-island witnesses to testify remotely.

The three new people named in the motion for reconsideration were Child's maternal grandmother; the person who "performed the behavior[al] and mental health evaluation" of

Child; and N.B.'s "friend and coworker." N.B. does not explain why they were not on his trial witness list even though he clearly knew — or would have known if he had de facto custody of Child — who they were.

The two witness categories named in N.B.'s motion for reconsideration were "teachers and other professionals" at Child's schools, and "the custodian of records at DHS and CWS case workers involved with the cases relating to" Child. The people who fit those categories were supposed to have personal knowledge about N.B.'s "reputation and ability as a father, and his emotional and educational support of" Child. N.B. does not explain why, if he had de facto custody of Child, he needed to conduct discovery to find out who these teachers and other professionals were, or to what they would testify. Nor does he explain what information the Department of Human Services or its Child Welfare Services case workers would have other than reports about him *not* having a stable and wholesome home, or that he was *not* a fit and proper person to have custody of Child.

On this record, we cannot conclude that N.B. was deprived of the opportunity to be heard at a meaningful time and in a meaningful manner.

The December 23, 2024 *Judgment of Paternity and Order Regarding Custody* is affirmed.

DATED: Honolulu, Hawaiʻi, December 19, 2025.

On the briefs:

Georgia K. McMillen,
for Respondent-Appellant N.B.

Benjamin E. Lowenthal,
for Petitioner-Appellee E.A.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge